UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CONSUELO MORA,

        Plaintiff,

   v.

ALLSTATE INSURANCE COMPANY,

        Defendant.

NO. CIV. S-05-0493 FCD/KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on defendant Allstate Insurance Company's ("defendant" or "Allstate") motion for summary judgment, or alternatively, partial summary judgment pursuant to Federal Rule of Civil Procedure 56.  By the motion, defendant seeks summary judgment in its favor as to plaintiff Consuelo Mora's ("plaintiff") two causes of action against it, for breach of contract and tortious breach of the covenant of good faith and fair dealing ("insurance bad faith claim").

    The court heard oral argument on the motion on January 13, 2006.  By this order, the court now renders its decision granting defendant's motion.  Plaintiff has failed to establish any cognizable damage and as such both her claims must fail;

1

alternatively, even were the court to find a triable issue with respect to plaintiff's damages, plaintiff has failed to demonstrate a breach of the insurance contract or bad faith by defendant.

## BACKGROUND[1]

Plaintiff was involved in an automobile accident on May 21, 2003. Pursuant to her automobile insurance policy with defendant (the "Policy"), after the accident, she presented bills for medical expenses to defendant. The Policy, "Coverage CC" for automobile medical payments, provides:

> Allstate will pay to or on behalf of an insured person all reasonable expenses the insured person becomes legally obligated to pay for necessary medical treatment, medical services or medical products actually provided to the insured person . . . . Payments will be made only when such expenses relate to bodily injury caused by an auto accident.

(SUF ¶ 2.) All of plaintiff's submitted medical bills were timely paid by defendant until June 2004.

At that time, Rheana Grant was the claims adjustor handling plaintiff's claim. (SUF ¶ 5.) In June, Ms. Grant reviewed certain medical bills that contained a diagnostic code for a degenerative condition as opposed to an acute or traumatic condition. (SUF ¶ 7.) Ms. Grant decided that further investigation was necessary to determine whether the bills

---

[1] Unless otherwise noted, the facts recited herein are undisputed and/or the parties' dispute with regard to the fact is not material to the motion and thus it is not considered by the court. (Def.'s Reply to Pl.'s Resp. to Def.'s Stmt. of Undisputed Facts, filed Dec. 30, 2005 ["SUF"].) Plaintiff's evidentiary objections to defendant's reply brief, filed Jan. 9, 2006, are overruled; defendant's reply brief properly raises arguments and evidence which *rebut* plaintiff's opposition; defendant does not present *new* arguments for the first time in reply.

2

1  related to an injury caused by the subject automobile accident.
2  (SUF ¶ 8.)  The Policy provides, in pertinent part, under the
3  caption "Unnecessary Or Unreasonable Medical Expenses:"

> If the insured person incurs medical expenses which
> we [Allstate] deem to be unreasonable or unnecessary,
> we may refuse to pay those expenses and contest them.
> Unreasonable medical expenses are fees for medical
> services which are substantially higher than the usual
> and customary charges for those services.  Unnecessary
> medical expenses are fees for medical services which
> are not usually and customarily performed for treatment
> of injury, including fees for an excessive number,
> amount, or duration of medical services.

(SUF ¶ 3.)  The Policy further provides under the caption "Proof Of Claim; Medical Reports:"

> As soon as possible, any person making a claim must give
> us written proof of the claim.  It must include all details
> we may need to determine the amounts payable.  We may
> also require any person making a claim to submit to
> questioning under oath and sign the transcript.
>
> The injured person may be required to take medical
> examinations by physicians we choose, as often as we
> reasonably require.  We must be given authorization to
> obtain medical reports and other records pertinent to
> the claim.

(SUF ¶ 4.)

Under these provisions, Ms. Grant wrote to plaintiff's counsel on June 24, 2004, explaining that "Allstate [could] no longer guarantee payments for medical care which [plaintiff] may have had or will have as a result of the [accident]."  (SUF ¶ 9.) Allstate, she explained in the letter, only covers "reasonable and necessary medical care to treat injuries resulting from an auto accident."  (Id.)  Ms. Grant requested that plaintiff submit to an independent medical examination ("IME") to determine whether the subject medical bills met these requirements.  (Id.) She also requested that plaintiff sign and return a medical

3

records authorization release form to allow Allstate to obtain her medical records which were necessary for the IME.  (Id.)

In response, plaintiff's counsel sent a letter to Ms. Grant on July 6, 2004.  He objected to the IME and indicated plaintiff would not sign the medical records release form until Allstate provided a copy of the subject policy.  (SUF ¶ 10.)  On July 8, 2004, Ms. Grant responded by letter, stating that it would take approximately two weeks to obtain a copy of the policy.  (SUF ¶ 12.)  In this letter, Ms. Grant also advised plaintiff's counsel that plaintiff's file would be handled by Joe Crowley in the future.  (Id.)  Thereafter, on July 22, 2004, Ms. Grant sent plaintiff's counsel the copy of the policy.

On July 29, 2004, Mr. Crowley wrote to plaintiff's counsel, again reiterating Allstate's request for an IME and a signed medical records release form from plaintiff.  (SUF ¶ 14.)  He did not receive a response and again wrote to plaintiff's counsel on September 2, 2004 making the same request.  (SUF ¶ 15.)  Sometime in October 2004, Mr. Crowley received from plaintiff's counsel the signed medical records release form.  (SUF ¶ 16.)  He then subpoenaed plaintiff's medical records.  After receipt of the records, he contacted CorVel Corporation to schedule an orthopedic IME.  (SUF ¶ 17.)  CorVel made arrangements for the IME with Dr. Auerbach.  Mr. Crowley did not select Dr. Auerbach, nor did he have any direct contact with him.  (SUF ¶ 19.)  CorVel informed Mr. Crowley that plaintiff had chosen the date of January 17, 2005 for the examination.  (SUF ¶ 18.)

Dr. Auerbach issued his report on January 24, 2005. (SUF ¶ 20.)  After reviewing the report, Mr. Crowley recommended to his

4

1 supervisor, Linda Mohr, that Allstate deny further medical
2 payments to plaintiff as not related to the subject automobile
3 accident.  (SUF ¶ 21.)  Ms. Mohr, however, disagreed and directed
4 Mr. Crowley, on February 3, 2005, to pay all pending bills.  Mr.
5 Crowley did so, making various payments on February 25 and 28,
6 2005, March 16, 2005, May 2, 2005, and May 11, 2005.  (SUF ¶ 22.)
7 Said payments dated back to services rendered as early as
8 November 12, 2003 and ending at the latest on January 6, 2005.
9 (Def.'s Resp. to Pl.'s Stmt. of Disputed Facts ["SDF"], filed
10 Dec. 30, 2005, ¶s 69-86.)

11     Plaintiff did not submit any further bills for medical
12 treatment to defendant.  (SUF ¶ 23.)  However, during plaintiff's
13 deposition on August 4, 2005, she described a medical bill from a
14 Dr. Duffy, who she had seen for a consultation regarding her
15 condition, which she testified had not been paid.  This was the
16 first time defendant learned of the bill.  Mr. Crowley later
17 requested information about the bill from Dr. Duffy, including
18 diagnostic and procedure codes, to allow for processing of the
19 bill.  Defendant thereafter paid Dr. Duffy's bill.  (SUF ¶ 23.)

20     In October 2005, Mr. Crowley received a fax from Dr. Duffy
21 recommending that plaintiff be evaluated and treated for
22 posttraumatic stress syndrome.  (SUF ¶ 24.)  On October 8, 2005,
23 Mr. Crowley wrote to plaintiff's counsel requesting that
24 plaintiff submit to an IME regarding the diagnosis of
25 posttraumatic stress syndrome and whether the stress was related
26 to the accident.  (SUF ¶ 25.)  Thereafter, plaintiff consented to
27 the IME which was set to take place in December 2005.  (SUF ¶
28 26.)

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); see <u>California v. Campbell</u>, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." <u>Nissan Fire & Marine Ins. Co. v. Fritz Cos.</u>, 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp.</u>, 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See <u>Triton Energy Corp. v. Square D Co.</u>, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to

support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## ANALYSIS

### 1. Damages

Preliminarily, the court considers the question of plaintiff's damages because absent evidence of damage to plaintiff as a result of defendant's delay in payment of certain of plaintiff's bills,[2] plaintiff does not have a cognizable claim against defendant, and defendant is entitled to summary judgment. Importantly, it must be noted at the outset that this case involves a *delay* in payment of medical bills (for at most, approximately one and half years), not a *denial* of payment/coverage. At times, plaintiff describes her claims and relies heavily on cases involving *denial* of coverage or payments; that situation is not present here. It is undisputed that defendant has paid, to date, every medical bill submitted to it by plaintiff. Thus, for plaintiff to establish damages, at all, she must tie her purported damages to the delay in payment by defendant.

On the issue of damages, defendant moves for summary judgment arguing that plaintiff conceded in her deposition that she has not sustained any damages as a result of conduct by defendant. Plaintiff conceded that: (1) with the exception of Dr. Duffy's bill, all medical bills had been paid by defendant

---

[2] According to plaintiff, at the time she filed suit on February 14, 2005, said bills totaled $6,719.00. (SUF ¶ 27.)

(SUF ¶ 27); (2) no healthcare provider has made a claim or filed a lawsuit against plaintiff for collection of an unpaid medical bill (SUF ¶ 36); (3) she has not experienced any negative impact on her credit rating because a medical bill has not been paid (SUF ¶ 37); and (4) she had not been denied credit because of an unpaid medical bill (Id.).  Plaintiff also testified that she was aware of the provisions in her Policy that if there was a collection action or lawsuit against her, Allstate would provide legal representation and contest the issue directly with the healthcare provider.  (SUF ¶ 38.)

In response to the motion, plaintiff now claims, for the first time, that her damages consist of her adversely affected credit rating caused by defendant's delay in payment of a medical bill.  Importantly, plaintiff obtained a credit report on September 21, 2005, approximately seven weeks *subsequent* to her deposition.  That report from "Consumer.Info.com" disclosed one medical bill, that had been submitted to defendant in the amount of $1,535.00, that had not been paid and had been turned over to collection.  Plaintiff contends the report demonstrates she was "damaged."

This belated attempt to establish damages appears contrived, clearly contravenes her testimony, and is wholly insufficient.  Plaintiff fails to proffer any evidence of cognizable damages, much less quantify such damages.  Aside from the report itself, plaintiff offers no evidence her credit rating was adversely affected.  Plaintiff also fails to acknowledge that it is undisputed that this bill was *paid* by defendant on February 25,

8

2005, more than six months before the report.[3] (SDF ¶ 69.) Moreover, even if the court were inclined to consider the report, it is nothing more than a "scintilla" of evidence of damages which is insufficient to withstand summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986) (nonmoving party is required to provide more than "a mere existence of a scintilla of evidence" to defeat summary judgment).

Next, plaintiff argues that she was damaged in that she refrained from applying for credit cards, at Macy's and Nordstrom's, for fear that she would not receive them due to her unpaid medical bills. This fact does not establish damage to plaintiff attributable to any conduct by defendant. *She chose* to not apply; she has no evidence of any denial of credit because of defendant's delay in payment of her medical bills.

Finally, as a last attempt to establish damages, plaintiff states that once she learned that certain bills of "Nova Care" had not been paid, *she* stopped her medical treatment with them because she was "too embarrassed" to continue. (Opp'n, filed Dec. 22, 2005, at 20:3.) Similar to her refraining to apply for certain credit cards, plaintiff cannot establish damage by virtue of *her choice* to discontinue medical treatment. Plaintiff has no evidence any healthcare provider denied her treatment due to unpaid bills.

While not necessary to resolution of the motion in light of the above findings, the court nonetheless discusses below its findings regarding the other elements of plaintiff's claims;

---

[3] In light of these circumstances, it appears plaintiff could have easily corrected this erroneous report.

there are further reasons to grant defendant's motion.

### 2. Breach of Contract

As to plaintiff's breach of contract claim, plaintiff likewise fails to proffer any evidence of a breach of the subject Policy. Indeed, plaintiff concedes all submitted medical bills have been paid by defendant. Plaintiff, nevertheless, argues defendant breached the policy in investigating plaintiff's medical expenses which caused a delay in the payment of her bills. Plaintiff, however, cannot demonstrate that defendant acted contrary to the Policy when it requested an IME and investigated the nature of certain of plaintiff's medical expenses as such investigation is expressly authorized by the Policy.

First, the policy's "med-pay" coverage extends only to medical expenses that are actually incurred by the insured and relate to an automobile accident (covered by the policy). (SUF ¶ 2.) The policy further provides that such medical expenses be both "reasonable" and "necessary." (SUF ¶ 3.) In that regard, the policy reserves defendant's right to contest med-pay expenses pending documentation regarding their reasonableness and necessity. (Id.) To further that process, defendant is authorized under the policy to require an injured person to take an IME by a physician chosen by defendant; said requests for an IME may occur as often as defendant "reasonably require[s]." (SUF ¶ 4.)

Here, plaintiff proffers no evidence that defendant acted contrary to or beyond the scope of these provisions. Defendant promptly paid plaintiff's medical bills until June 2004; at that

10

time, Ms. Grant sought further information regarding certain of plaintiff's bills because they contained a code for a degenerative condition which she believed may not be related to the subject accident.  (SUF ¶s 7-8.)  Pursuant to the express terms of the Policy, she requested plaintiff submit to an IME and provide authorization for defendant to obtain her medical records.  (SUF ¶ 9.)  Any delay in that process was largely due to plaintiff's own conduct by objecting to the IME and medical records release, and then by choosing to schedule the IME in January 2005.  (SUF ¶s 10, 12, 14-18.)  Dr. Auerbach timely rendered his report, within a week of the examination,[4] and defendant made its decision to pay all pending bills within two weeks thereafter.  (SUF ¶s 20-22.)

 A breach of the policy cannot be found under these facts. The case of <u>Nager v. Allstate Insur. Co.</u>, 83 Cal. App. 4th 284 (2000) is particularly instructive.  In <u>Nager</u>, the court of appeal considered the same Allstate policy language as involved in this case.  In considering plaintiff Nager's bad faith insurance claim, the court found that Allstate acted in accordance with the policy in that:

/////

---

[4]  To the extent plaintiff argues that Dr. Auerbach was biased in favor of defendant, her arguments are unavailing: First, the policy permits *defendant* to choose the physician for the IME; however, in this case, the choice of physician was made by an independent provider, CorVel.  Defendant did not choose Dr. Auerbach or have any direct contact with him.  Moreover, defendant did not ultimately accept the findings of Dr. Auerbach, that plaintiff's injuries from the accident were resolved and her present conditions were unrelated to the accident.  Thus, even assuming Dr. Auerbach was biased in favor of defendant, plaintiff has no basis for relief as his opinions were not accepted by defendant.

11

>     Allstate did not stonewall Nager's med-pay claim or
>     take the position that soft tissue injuries or
>     chiropractic treatments were not covered.  To the
>     contrary, Allstate promptly paid [the chiropractor's]
>     first bill and only questioned subsequent billings
>     when the treatment charges appeared to exceed both his
>     original treatment plan and the amount it determined
>     was customary and reasonable for Nager's diagnosis.
>     Allstate indicated its willingness to continue its
>     investigation and reevaluate the payments upon
>     further information from the medical providers.

(Id. at 291.)  Similarly, here, defendant initially paid all submitted medical bills; only when the bills denoted a changed circumstance (evidence of a degenerative condition rather than an acute trauma) did defendant contest the bills; after investigation of the bills pursuant to the Policy's express terms (via the IME and production of plaintiff's medical records), defendant decided *to pay* all pending bills and promptly did so. There is simply no evidence defendant breached its contract with plaintiff in this case.

### 3.  Insurance Bad Faith Claim[5]

Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing.  Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979).  A cause of action for breach of the implied covenant is characterized as "insurance bad faith," for which a plaintiff may recover tort damages.  To succeed on such a claim, the plaintiff must show that the insurer erroneously failed to pay benefits under an insurance policy, and

---

[5]  Defendant argues that should the court find in its favor on plaintiff's breach of contract claim, it need not reach plaintiff's insurance bad faith claim because said claim requires a breach of the subject contract.  Defendant is incorrect.  "Breach of a specific provision of the contract is not a necessary prerequisite" to an insurance bad faith claim.  Carma Developers (California), Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342, 373 (1992).

12

the failure to do so was without proper cause. <u>Adams v. Allstate Insur. Co.</u>, 187 F. Supp. 2d 1219, 1226 (C.D. Cal. 2002).

While the question of whether an insurer has acted in bad faith is generally one of fact, "where there is a genuine issue of an insurer's liability under a policy, a court can conclude that an insurer's actions in denying the claim were not unreasonable as a matter of law." <u>Id.</u> at 1226. Thus, a bad faith claim can be dismissed on summary judgment if the defendant can show there was a genuine dispute as to coverage. <u>Guebara v. Allstate Insur. Co.</u>, 237 F.3d 987, 993 (9th Cir. 2001).

Here, defendant has demonstrated a "genuine dispute" as to coverage. Ms. Grant was prompted to further investigate plaintiff's medical bills due to a new diagnostic code (for a degenerative condition) which she believed may have indicated that the medical expenses were unrelated to the automobile accident. Her assessment was later confirmed by Dr. Auerbach who determined that plaintiff's injuries attributable to the accident had resolved and any current conditions were unrelated to the accident. (SUF ¶ 20.) While defendant did not accept Dr. Auerbach's findings and instead paid plaintiff's expenses, his report is evidence of a genuine coverage dispute under the Policy. Other than a conclusory challenge to the credentials of Dr. Auerbach, plaintiff proffers no evidence in rebuttal.

Under these facts, where a genuine dispute as to coverage is present, plaintiff cannot withstand summary judgment on a claim of bad faith.

/////

/////

### 4. **Punitive Damages**

Because the court determines that defendant is entitled to summary judgment on plaintiff's bad faith claim, defendant is also entitled to summary judgment on the related claim for punitive damages. Adams, 187 F. Supp. 2d at 1231 (holding "a plaintiff who is not able to survive summary judgment on an insurance bad faith claim, is also unable to survive summary judgment on a . . . claim for punitive damages").

**CONCLUSION**

For the forgoing reasons, defendant's motion for summary judgment is GRANTED. The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: January 18, 2006

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE